UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ANDREW U. D. STRAW, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) 2:25-cv-00391-JAW |
| | ) |
| AVVO Inc., | ) |
| | ) |
| Defendant | ) |

**ORDER ON RECOMMENDED DECISION AND OBJECTION**

After de novo review, a federal court affirms a magistrate judge's recommendation that the court dismiss a complaint for lack of subject matter jurisdiction on the ground that a United States citizen domiciled in a foreign country cannot invoke a federal court's diversity jurisdiction, and further because the issue raised in the complaint is barred by the doctrine of res judicata. The court also agrees with the magistrate judge that an appeal from this order of dismissal would not be taken in good faith and additionally warns the plaintiff, who has filed five actions before this court within as many weeks, that filing restrictions may be in the offing if he continues to commence repetitive suits without a proper jurisdictional basis or when a prior action on the same facts against the same party has been dismissed with prejudice.

**I.  BACKGROUND**

On July 25, 2025, Andrew U. D. Straw, a United States citizen residing in the Philippines, filed a civil complaint against AVVO, Inc. (AVVO), a corporation headquartered in Seattle, Washington, in the District Court for the District of Maine

pursuant to the Court's diversity jurisdiction, alleging breach of contract and seeking $250,000 in damages. *Compl.* (ECF No. 1). On the same day, the Plaintiff filed a motion to proceed without the prepayment of fees. *Appl. to Proceed in Dist. Ct. Without Prepaying Fees or Costs* (ECF No. 3) (*In Forma Pauperis Appl.*). On July 26, 2025, Mr. Straw filed a self-styled "motion for recognition," which the Court interprets as a first request for judicial notice. *Mot. for Recognition of VSB Exoneration Order Being the Law in this U.S. Dist. Ct.* (ECF No. 10). He filed a lis pendens notice on July 29, 2025. *Lis Pendens Notice* (ECF No. 11). Two days later, on July 31, 2025, Mr. Straw filed a second request for judicial notice. *Mot. to Notice Straw Pet. to VSB* (ECF No. 12).

On August 1, 2025, a United States Magistrate Judge granted Mr. Straw's motion to proceed in forma pauperis, *Order* (ECF No. 13), and, after performing a preliminary review pursuant to 28 U.S.C. § 1915(e)(2), recommended the Court dismiss his complaint on the ground that a federal court lacks diversity jurisdiction over a complaint filed by a United States citizen who is domiciled abroad. *Recommended Decision After Prelim. Rev.* (ECF No. 14) (*Rec. Dec.*). The Magistrate Judge additionally recommends the Court conclude that all other pending motions on this docket are moot, certify that any appeal of the order of dismissal would not be taken in good faith, and, upon observing that Mr. Straw has filed multiple baseless actions in this District within the last month, warn the Plaintiff that filing restrictions may be in the offing. *Id.* at 4. Mr. Straw objected to the Recommended

2

Decision on August 2, 2025. *Resp. Objecting to the Recommendation of the Mag. J. to Dismiss* (ECF No. 15) (*Pl.'s Obj.*).

Also on August 2, 2025, Mr. Straw filed a third request for judicial notice, *Mot. to Take Judicial Notice of Cases in Which Pl. Received Settlement, Not "Frivolous" as the Outcome* (ECF No. 16), which he then supplemented with additional attachments on August 4, 2025. *Additional Attachs.* (ECF No. 17). The Plaintiff filed a fourth request for judicial notice on August 3, 2025. *Mot. to Take Judicial Notice of AVVO's Significant Settlement of a Class Action Lawsuit Founded on Breach of Contract* (ECF No. 18). On August 4, 2025, he moved the Court to serve the Defendant with the summons and complaint. *Mot. for Serv.* (ECF No. 19). The Plaintiff submitted two affidavits on August 6, 2025, *Aff. Re "Frivolous"* (ECF No 20); *Aff. II Re "Frivolous"* (ECF No. 21), and, on the same day, the Magistrate Judge barred Mr. Straw from making any further motions pending the resolution of the recommended decision. *Order* (ECF No. 22).

## II. THE MAGISTRATE JUDGE'S RECOMMENDED DECISION

Pursuant to the screening provisions of 28 U.S.C. § 1915(e)(2), the Magistrate Judge recommends the Court dismiss Mr. Straw's complaint against AVVO because a federal court lacks subject matter jurisdiction over a state law breach-of-contract claim brought by a United States citizen residing in the Philippines. *Rec. Dec.* at 1. The Magistrate Judge observes that "[d]iversity jurisdiction under 28 U.S.C. § 1332(a) requires complete diversity; 'that is, no plaintiff may be a citizen of the same state as any defendant,'" *id.* (quoting *BRT Mgmt. LLC v. Malden Storage LLC*, 68

3

F.4th 691, 695 (1st Cir. 2023)), and that, "[i]n order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States *and* be domiciled within the State." *Id.* (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989)) (emphasis in original). Because "United States citizens who are domiciled abroad are citizens of no state," the Magistrate Judge reports that they cannot "satisfy the requirements of diversity jurisdiction" in 28 U.S.C. § 1332(a)(1). *Id.* at 1-2 (first quoting *D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra*, 661 F.3d 124, 126 (1st Cir. 2011); then quoting *Hearts with Haiti, Inc. v. Kendrick*, 856 F.3d 1, 4 (1st Cir. 2017)).

Here, "[b]ecause Straw has lived in the Philippines for seven years and it is clear that is where [he] intends to remain—indeed, he is seeking asylum and building a house there and is engaged to a citizen [of the Philippines]," the Magistrate Judge determines "he is domiciled in that country," *id.* at 2 (citing *Bank One, Tex., N.A. v. Montle*, 964 F.2d 48, 50 (1st Cir. 1992)), and, thus, "cannot claim diversity jurisdiction in any federal court, including the District of Maine." *Id.* at 3 (quoting *McCaslin v. Mass.*, No. 2:23-cv-00375-JAW, 2023 U.S. Dist. LEXIS 180427, at *5 (D. Me. Oct. 6, 2023)) (citation amended).

"Moreover," the Magistrate Judge observes, "even if this Court had jurisdiction, Straw's complaint would be subject to dismissal on res judicata grounds because it is, by his own description, an improper end run around the unfavorable result in his prior case against Avvo in the Western District of Washington." *Id.* (citing *Straw v. Avvo, Inc.*, No. C20-0294 JLR, 2020 U.S. Dist. LEXIS 209396, at *6

(W.D. Wash. Nov. 9, 2020) (citation amended) (dismissing Mr. Straw's case against AVVO with prejudice); *Compl.* ¶ 60 ("I need another U.S. District Court to allow me to litigate this, outside the 9th Circuit")).

The Magistrate Judge continues that, upon review, "[a] PACER search reveal[ed] over 150 matters bearing Straw's name, and he has initiated five cases in this Court in the last month or so." *Id.* (citing *Straw v. Univ. of Me.*, No. 1:25-cv-00325-JAW; *Straw v. State of Me. Vocational Rehab.*, No. 1:25-cv-00350-JAW; *Straw v. United States*, No. 2:25-cv-00378-JAW; *Straw v. United States*, No. 2:25-cv-00379-JAW). The Magistrate Judge recommends the Court warn Mr. Straw that filing restrictions pursuant to *Cok v. Family Court of Rhode Island*, 985 F.2d 32 (1st Cir. 1993) may be in the offing "[g]iven his status as a serial litigator and the baseless nature of the instant complaint." *Id.* at 3-4 (citing *Cok*, 985 F.2d at 34-35).

Finally, the Magistrate Judge urges the Court to certify that any appeal from its order dismissing this matter would not be taken in good faith. *Id.* at 4 (citing 28 U.S.C. § 1915(a)(3)) ("An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith); FED. R. APP. P. 24(a)(3)(A) ("A party who was permitted to proceed in forma pauperis in the district-court action . . . may proceed on appeal in forma pauperis without further authorization, unless . . . the district court—before or after a notice of appeal is filed—certifies that the appeal is not taken in good faith . . . and states in writing its reasons for the certification").

Based on the foregoing, the Magistrate Judge recommends the Court dismiss Mr. Straw's complaint, further dismiss any other pending motions as mooted by the

5

dismissal of his complaint, warn the Plaintiff that filing restrictions may be in the offing, and certify that any appeal from the order of dismissal would not be taken in good faith. *Id.*

### III. ANDREW U. D. STRAW'S OBJECTION

Mr. Straw first objects to the Recommended Decision's determination that the Court lacks diversity jurisdiction, insisting "[w]hile factually it is true that I have lived overseas in the Philippines since 2018, I have never been granted asylum here and my visa is still officially a tourist visa, not an immigrant one," adding "[t]his type of visa cannot be deemed as permanent residence here in the Philippines." *Pl.'s Obj.* ¶¶ 3-4. "What can be definitively shown is that **I have never lived in Washington State**, where Avvo's headquarters are located," he says, arguing "[t]hus, diversity cannot be defeated based on my having a residence where Avvo's residence is as a matter of law because of that fact." *Id.* ¶¶ 7-8 (Plaintiff's emphasis).

Next, while he acknowledges he is engaged to be married to a Philippines citizen, he insists "we are not married yet," and adds, "I have been living in her hut in the jungle for several months, but I still am only **here as a tourist** who **seeks more** but **does not have more** at this time." *Id.* ¶¶ 9-11 (Plaintiff's emphasis). "Under such conditions, an American U.S. citizen does not become stateless just because he visits somewhere else for a long time as a tourist," he concludes. *Id.* ¶ 12.

Furthermore, Mr. Straw reports that he "inten[ds] to form a federal civil rights focused and federal agency focused law firm that covers Maine," he "earned an 'A' in a Disability Studies graduate course in Maine last year," and "was found eligible for

6

**Maine** Vocational Rehabilitation Services," insisting "[g]iven my expressed intent to come live in Maine and have a business there, these contacts are far more substantial than just **being** in the Philippines with the only actual fact being that **I am still a tourist**." *Id.* ¶¶ 13-19 (Plaintiff's emphasis). He additionally reports that his last physical residence in the United States before departing for the Philippines was in Kane County, Illinois, a state where he remains registered to vote, and accordingly argues "[t]hese are also stronger contacts than having a tourist visa for a long *visit* in the Philippines without more." *Id.* ¶¶ 20-21 (Plaintiff's emphasis). Finally, Mr. Straw claims he has an address in Garden City, Idaho at which he can receive mail. *Id.* ¶ 23.

"To strip me of state citizenship over something as flimsy as a tourist visa and a 'hope' that I can have asylum due to the discrimination from federal courts that abuse the term frivolous is excessive and not warranted," he claims, insisting further that "[his] past residence in Illinois and . . . expressed residence hope for Maine and the First Circuit with steps taken by me in that direction are much stronger **actual connections** than my temporary if extended tourism in the Philippines." *Id.* ¶¶ 24-25 (Plaintiff's emphasis). He adds that his fiancée is building a house "with [his] money" in the Philippines. *Id.* ¶ 26. Finally, Mr. Straw asserts "**Philippines vis-à-vis me** is a territory of the USA, as it was before Congress violated the Constitution to create a nation." *Id.* ¶ 27 (citing 28 U.S.C § 1332(e)) (Plaintiff's emphasis). He claims that a territory of the United States "is considered **a state** for diversity cases." *Id.* ¶ 29 (Plaintiff's emphasis).

Second, he argues the Magistrate Judge was incorrect to conclude the breach-of-contract claim raised in his complaint is barred on res judicata grounds, insisting "[t]he case in Western District of Washington was **not a breach of contract case**[;] **[i]t was a tort case."** *Id.* ¶¶ 36-37 (Plaintiff's emphasis). He continues, to assert that "[he] ha[s] presented a COMPLAINT here without any statute of limitations issues," and "with **one count: breach of contract**," an issue he claims "has never been adjudicated by a federal court ***anywhere***." *Id.* ¶¶ 48-50 (Plaintiff's emphasis). Mr. Straw next restates the allegations included in his complaint and revisits the arguments raised previously in his objection. *Id.* ¶¶ 53-83.

Finally, Mr. Straw objects to the Magistrate Judge's characterization of his complaint as frivolous, claiming "the Magistrate Judge **overstepped** in saying I have filed anything that was frivolous. I have not." *Id.* ¶¶ 86-87 (Plaintiff's emphasis). He adds, "AND, I have objected vigorously to the **abuse of that frivolous term** by federal judges. See how I dissent and reject abuses of frivolous and have advocated for a new federal law to reign in abuse of this term." *Id.* ¶¶ 86-88 (Plaintiff's emphasis). Mr. Straw requests "an apology for that accusation," alleging "[i]t reminds me of the abuses I suffered in the Midwest courts and I won't stand for it." *Id.* ¶¶ 94-95.

## IV. LEGAL STANDARD

Plaintiff filed a timely objection to the Magistrate Judge's Recommended Decision, and the Court thus "shall make a de novo determination of those portions of the . . . recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see*

*also* 28 U.S.C. § 636(b)(1)(B).  At the same time, the Court is "only obliged to perform de novo review of disputed portions of the report and recommendation." *United States v. J.C.D.*, 861 F.3d 1, 6 (1st Cir. 2017).  Under this standard, the Court reviews factual findings for clear error, *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999), and gives plenary review to pure questions of law.  *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010).

## V. DISCUSSION

The Court reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record.  After de novo review, the Court affirms the Magistrate Judge's recommendation of dismissal and orders that this case be dismissed.

Federal subject matter jurisdiction, as Mr. Straw invokes in this dispute, is premised on diversity of citizenship, requiring that each plaintiff be a citizen of a different state from each defendant.  28 U.S.C. § 1332(a)(1).  "In order to be a citizen of a State within the meaning of the diversity statute, a natural person must be both a citizen of the United States *and* be domiciled within the State." *Newman-Green, Inc.*, 490 U.S. at 828 (emphasis in original); *accord D.B. Zwirn Special Opportunities Fund, L.P.*, 661 F.3d at 126 ("United States citizens who are domiciled abroad are citizens of no state").  Thus, it is well established tenet of federal jurisprudence that "Americans who are domiciled abroad do not satisfy any of the enumerated categories required for a federal court's exercise of diversity jurisdiction." *Hearts with Haiti,*

*Inc.*, 192 F. Supp. 3d 181, 187-88 (D. Me. 2016) (quoting *Freidrich v. Davis*, 767 F.3d 374, 377 (3d Cir. 2014)).

Here, the Magistrate Judge's determination that Mr. Straw cannot act pursuant to this Court's, or any federal court's, diversity jurisdiction because he is domiciled abroad and, thus, not a citizen of any state, is indisputably correct. Domicile must be determined from the time the suit was filed, *id.* at 191-92 (citing *Padilla-Mangual v. Pavia Hosp.*, 516 F.3d 29, 31 (1st Cir. 2008)), and is "the place where [one] has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Rodríguez-Díaz v. Sierra-Martínez*, 853 F.2d 1027, 1029 (1st Cir. 1988)) (internal quotation marks omitted). There are two requirements for domicile: (1) "physical presence in a place" and (2) "the intent to make that place one's home." *Hearts with Haiti, Inc.*, 192 F. Supp. 3d at 192 (quoting *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 366 (1st Cir. 2001)).

In assessing the second prong of this inquiry, intent to remain, the First Circuit has instructed courts to consider "current residence; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs and other associations; place of employment or business; driver's license and other automobile registration; [and] payment of taxes." *García Pérez v. Santaella*, 364 F.3d 348, 351 (1st Cir. 2004) (quoting 13B CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3612 (2d ed. 1984)). These factors are to be applied in a holistic rather than mechanistic manner, as "[n]o single factor is

dispositive, and the analysis focuses not simply on the number of contacts with the purported domicile, but also on their substantive nature." *Id.*

Here, Mr. Straw himself informs the Court that he has lived in the Philippines for over seven years. *Pl.'s Obj.* ¶¶ 3-4. He has further applied for asylum in that country and is engaged to be married to a Philippines citizen, who Mr. Straw additionally alleges is building a home in part with his money in the Philippines. *Pl.'s Obj.* ¶¶ 9-11, 26.

Addressing similar facts in an analogous case, the First Circuit affirmed this Court's determination that a United States citizen could not claim diversity jurisdiction where he had lived in Haiti for over two decades, owned property in Haiti, worked and paid taxes in Haiti, and intended to be buried in Haiti. *See Hearts with Haiti, Inc.*, 856 F.3d at 3. The Court reached this determination, and the First Circuit affirmed, even though the litigant "has connections to Iowa as well: he was born and raised there, holds an Iowa bank account and an Iowa driver's license, is registered to vote in Iowa, and occasionally visits Iowa." *Id.* (observing "[b]ut in reality these bare facts are inconsequential").

The Court reaches the same conclusion as to Mr. Straw and determines, considering the factors, he was physically present in the Philippines when he filed this lawsuit and he had an intent to remain and make his home there. His conclusory allegations to the contrary, based on his voter registration in Illinois, his mailing address in Idaho, and his education and speculative plans related to a future residency in Maine, do not change the result, and the Court concludes, as in *Hearts*

11

*with Haiti, Inc.*, "in reality these bare facts are inconsequential" in comparison to the Plaintiff's seven-year residency in the Philippines, his pending asylum application in the Philippines, his marital engagement to a woman from the Philippines, and home construction in the Philippines, in which he is personally financially invested. *See id.* Indeed, in Mr. Straw's in forma pauperis application, he affirms his intention to live in the home being constructed on land owned by his fiancée's family in the Philippines. *In Forma Pauperis Appl.* at 2 (ECF No. 3) ("My fiancée is building a house on land owned by her family and I give any money I have to her as a gift to that cause because I will live there for free"). Based on the foregoing, the Court concludes it cannot exercise diversity jurisdiction over this suit because "Americans who are domiciled abroad do not satisfy any of the enumerated categories required for a federal court's exercise of diversity jurisdiction." *See Hearts with Haiti, Inc.*, 192 F. Supp. 3d at 187-88.[1]

Although the Court has determined Mr. Straw's complaint requires dismissal for lack of subject matter jurisdiction, the Court takes an additional moment to address the Magistrate Judge's alternative basis for dismissal: res judicata. The doctrine of res judicata prevents a party who has already litigated a matter from taking another "bite at the apple" by attempting the same litigation against the same

---

[1]    Mr. Straw himself alleges "[his] residence is in the Philippines now" in his amended complaint submitted on April 9, 2020 on Docket Number 2:20-cv-00294-JLR in the Western District of Washington. No. 2:20-cv-00294-JLR, *First Am. Compl.* ¶ 33 (ECF No. 13). Although the Court must determine Mr. Straw's residency as of the date he filed his complaint in this case—to wit, July 25, 2025—Mr. Straw's 2020 allegation is consistent with the Court's conclusion here that as of the date of filing, he was domiciled in the Philippines, and consistent with his long-term residency in the Philippines.

party a second time. The res judicata doctrine bars the later action if "1) the same parties, or their privies are involved; 2) a valid final judgment was entered in the prior action; and 3) the matters presented for decision were, or might have been, litigated in the prior action." *Roy v. City of Augusta, Me.*, 712 F.2d 1517, 1520 (1st Cir. 1983) (internal quotation marks omitted).

Here, Mr. Straw variously concedes he has brought this case before, *see Compl.* ¶ 60 ("I need another U.S. District Court to allow me to litigate this, outside the 9th Circuit"), and objects to the Magistrate Judge's determination that this action is barred by res judicata because "[t]he case in Western District of Washington was **not a breach of contract case.** It delved deep into tort [and] **was a tort case.**" *Pl.'s Obj.* ¶ 37 (emphasis in original). However, whether Mr. Straw's complaint or amended complaint asserted a contract claim in the Western District of Washington is immaterial because res judicata applies to claims both that were brought and that could have been brought. *See Maher v. GSI Lumonics, Inc.*, 433 F.3d 123, 126 (1st Cir. 2005) ("Under the federal law of res judicata, a final judgment on the merits of an action precludes the parties from relitigating claims that were raised or could have been raised in that action") (quoting *Porn v. Nat'l Grange Mut. Ins. Co.*, 93 F.3d 31, 34 (1st Cir. 1996)).

Mr. Straw himself admits the second circumstance is operative here, alleging that, "[i]n fact, [he] tried to add that [breach of contract] issue in 2025, but the federal judge [in the Western District of Washington] said he would not allow me to amend to add that." *Pl.'s Obj.* ¶ 38. Upon the Court's review, United States District Judge

13

James L. Robart denied Mr. Straw's motion to amend his complaint "[b]ecause judgment has already been entered in this case" and, even liberally construing Mr. Straw's request as a motion for relief from judgment, concluded the Plaintiff's request did not warrant relief under Federal Rule of Civil Procedure 60(b). Docket No. 2:20-cv-00294, *Order* at 1-4 (ECF No. 81) (W.D. Wash. July 18, 2025). Based on the foregoing, including Mr. Straw's own admission, *see Compl.* ¶ 90; *Pl.'s Obj.* ¶ 38, the Court fully agrees with the Magistrate Judge's determination that this complaint is barred on res judicata grounds. Simply, Mr. Straw does not have the right to refile a lawsuit in the District of Maine against the same Defendant on the same set of operative facts that has already been dismissed with prejudice in the Western District of Washington.

Relatedly, the Magistrate Judge observes that Mr. Straw has filed approximately five actions in this Court within the last month and recommends the Court warn the Plaintiff that filing restrictions may be in the offing because, on the Magistrate Judge's review, they may contain duplicative and baseless claims. *See Straw v. Univ. of Me.*, No. 1:25-cv-00325-JAW; *Straw v. State of Me. Vocational Rehab.*, No. 1:25-cv-00350-JAW; *Straw v. United States*, No. 2:25-cv-00378-JAW; *Straw v. United States*, No. 2:25-cv-00379-JAW). The Court agrees with the Magistrate Judge on both points. First, the Magistrate Judge is correct that "district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases," *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016), and this inherent authority encompasses "[a] district court['s] . . .

14

power to enjoin litigants who abuse the court system by filing groundless and vexatious litigation." *Stefanik v. Town of Huntington*, 536 F. Supp. 2d 106, 114 (D. Mass. 2008) (citing *Elbery v. Louison*, 201 F.3d 427 (1st Cir. 1999) (per curiam)). Furthermore, "[c]ourts in this circuit have repeatedly found that a plaintiff who files multiple frivolous and vexatious lawsuits arising out of the same or similar events can be enjoined from filing further lawsuits without leave." *Clemens v. Town of Scituate*, No. 13-cv-11598-FDS, 2014 U.S. Dist. LEXIS 81461, at *19 (D. Mass. June 16, 2014) (collecting cases); *see also Cok*, 985 F.2d at 34-45 (addressing district courts' authority to "regulate the conduct of abusive litigants," including through the imposition of filing restrictions).

Second, the Court agrees with the Magistrate Judge, for the reasons explained within her recommended decision and in this order, that a *Cok* warning is warranted here—namely because, on the Magistrate Judge's review and this Court's confirmation, Mr. Straw has been filing repetitive actions in this District over which there is clearly no diversity jurisdiction, given his domicile in the Philippines, and in this case having previously sought and been denied relief, with prejudice, on the same facts against the same party in another federal court. Finally, Mr. Straw's past history of over 150 civil actions in other federal courts combined with his recent history of five new civil actions in this District within the last month convince the Court that he is a serial litigator. This abuse of the Court's limited resources will not be tolerated. Consistent with *Cok* and its requirement to warn litigants of potential filing restrictions, the Court expressly warns Mr. Straw that "filing restrictions may

be in the offing." *Cok*, 985 F.2d at 35. The Court is conscious of its obligation under *Cok* to frame filing restrictions "narrowly drawn to counter the specific offending conduct," and not to "improperly preclude access to the courts with respect to unrelated matters." *Id.* at 36. As such, the Court warns Mr. Straw that, if he persists, the Court will contemplate a filing restriction limiting his right to file diversity-based lawsuits and lawsuits barred by the doctrine of res judicata against parties and based on facts previously dismissed with prejudice.

Finally, the Court affirms the Magistrate Judge's suggestion that the Court certify that any appeal from this order of dismissal would not be taken in good faith, on account of both the clearly demarcated rules surrounding domicile and diversity jurisdiction, and the doctrine of res judicata. *Rec. Dec.* at 4 (citing 28 U.S.C. § 1915(a)(3); FED. R. APP. P. 24(a)(3)(A)).

## VI.   CONCLUSION

Having performed a de novo review pursuant to 28 U.S.C. § 363(b)(1)(B), the Court AFFIRMS Recommended Decision After Preliminary Review (ECF No. 14) and accordingly DISMISSES Andrew U. D. Straw's Complaint (ECF No. 1), CERTIFIES that an appeal from this order would not be taken in good faith, and WARNS the Plaintiff that filing restrictions may be in the offing if he continues to file frivolous actions in this Court.).

Finally, having determined it lacks subject matter over this case, the Court DISMISSES as moot Andrew U. D. Straw's Motion for Recognition of VSB Exoneration Order Being the Law in this U.S. District Court (ECF No. 10), Motion to

Notice Straw Petition to VSB (ECF No. 12), Motion to Take Judicial Notice of Cases in Which Plaintiff Received Settlement, Not "Frivolous" as the Outcome (ECF No. 16), Motion to Take Judicial Notice of AVVO's Significant Settlement of a Class Action Lawsuit Founded on Breach of Contract (ECF No. 18), and Motion for Service (ECF No. 19).

    SO ORDERED.

                                          /s/ John A. Woodcock, Jr.
                                          JOHN A. WOODCOCK, JR.
                                          UNITED STATES DISTRICT JUDGE

Dated this 7th day of August, 2025